The next matter called, Agenda No. 2, Case No. 120331, People of the State of Illinois, Appalachia v. Drew Peterson, Appellant. Is the counsel ready? You may proceed. Counsel, you are dividing your time. You're responsible for maintaining your own limits. Yes, Your Honor. May it please the Court, my name is Gerald Krent. I'm representing the defendant. With me is Steven Greenberg. I will be addressing the evidentiary issues and Mr. Greenberg will be addressing the ineffective assistance of counsel issues. Before the trial began in this case, the appellate court intervened and tainted the subsequent proceedings by holding that the General Assembly's procedural protections underlying the forfeiture by wrongdoing doctrine should be ignored. That separation of powers ruling flies in the face of many cases of this Court that has upheld the General Assembly's policy statements governing admissions of evidence, as long as they are reconcilable with judicial policy. These are not a question of judicial administration of justice, but rather the questions of evidence. And the Court below relied upon the Walker decision, as has the State in this case. And your decision in Walker sets the exact framework that should be followed, because the Walker decision holds that as long as there's some kind of way to reconcile the two pronouncements, that of the General Assembly, that of the judiciary, then the General Assembly's more specific, more refined specifications should govern. In that case, added to a substitution of counsel, the legislature's decision was different, but nonetheless the Court upheld the legislature's decision. The same is true in the Lutheran General Hospital case that had to do with immunity for certain health care communications. And in short, it's important to go back to this Court's decision in Waffensmeyer, because the Court summarized that, and I quote, the legislature has the power to prescribe new rules of evidence and alter existing ones, and to prescribe methods of proof. Such action does not offend the separation of powers clause of our Constitution. Indeed, the State posed no decision of this Court that has undermined or invalidated a statute on separation of powers grounds for prescribing a rule of evidence. And indeed, this Court has upheld changes of victim impact evidence, introduction of business records, prior inconsistent statements, and many more. So in this case, the decision of the legislature on forfeiture by wrongdoing was clearly reconcilable. All they suggested was you have to write findings, that's simple, and that the individual statements had to be deemed reliable. Reliability is a very familiar form of evidentiary determination. The court did not intrude, I'm sorry, the legislature did not intrude and say what kind of weight the reliability had to find, what kind of quantum. So in short, this is a very run-of-the-mill case where the General Assembly has added on a small amount to a common law rule, and there's no reason to invalidate the evidentiary prescription under the separation of powers ground. And on that basis alone, Your Honor, yes, Your Honor. What effect should subsection G have, the statute that says this section in no way precludes or changes the application of existing common law doctrine of forfeiture by wrongdoing? Well, the appellate court struggled with that a little bit, Your Honor, and the appellate court basically suggested that it would be with respect to any aspects of the common law rule other than those in the legislature, those should stay the same. Because the legislature only picked out one small element of forfeiture by wrongdoing, that dealing with the alleged killing of a witness for this rule. All other aspects of the common law rule remained intact. And so my understanding, and I believe that's what the Court of Appeals thought as well, was that the legislature just wanted to signal this minor revision is only to be instituted or followed in the very narrow subset of cases, those in which the incendiary case in which someone has been alleged to have killed a witness. So again, totally reconciled. Does the statute conflict with this Court's holding in Hansen? No, Your Honor. And the reason why it doesn't is simply because the court never reached these issues in Hansen. The court specifically said there was no challenge to the unavailability of a witness in that case. So in a sense, obviously there was a different procedural framework in Hansen, but there was no focus on the legislature in that case. But there was discussion about whether or not reliability was an element that needed to be proved. Right. In a sense, that's right. Because it was before the statute. And so the statute didn't come into play in the Hansen case. So, but again, let's assume the holding of Hansen would be that an element to be proven in a case where the state is proposing evidence that is to be admitted based on this concept, this doctrine, one of that, that reliability is not necessary. There's a change, Your Honor. Of course there's a change. There's a change as there was in Walker. There's a change as there was in Lutheran Hospital. Right. So there is a refinement. There's no question about it. And the question is in all these cases, this court has held we want to reconcile the policy prescriptions of the General Assembly if there's some kind of change, as long as it doesn't diametrically alter the landscape. And there's been no such altering the landscape in this case. But of course there's a change. Yes, sir. Excuse me. Is it your position that the state had to point to specific testimony that the defendant was trying to prevent by the murder? Let me turn to that because that's my second argument, Your Honor. And the second argument is there's a specific intent element in forfeiture by wrongdoing, articulated by this court in Rolandus G., articulated by the Supreme Court in Giles. And with respect to the specific intent element, the question is what needed to be shown to say that not just that there was a killing of a witness, but the idea was to kill the witness to make that witness unavailable for testimony at a trial. So in a typical specific intent crime like burglary, it's not enough to say there was a breaking and entering. There must be a finding that there was a breaking and entering for the purpose of committing a felony. For Dennis Haster's question of restructuring taking the loans from the bank, it's not enough to show that he took out the loans. There had to be a finding that he took out the loans for improper purpose, namely to evade the reporting requirements. That's not what's going on here. The specific intent element articulated in Rolandus G. and Giles can only be satisfied if there's some kind, as you suggested, Your Honor, some kind of evidence that there was an attempt to evade or avoid particular testimony. And we're left guessing. We have no idea what testimony it is. We have no idea what proceeding it is. And that's exactly what Michigan court held in the Roscoe case. And to quote part of the Michigan case, it said that with, I quote, without specific findings by the trial court regarding intent, and then, end quote, there would be no forfeiture by wrongdoing found because the specific intent element wasn't satisfied. So it was a legal matter, even if you disregard May I be inferred under Giles with circumstantial evidence? Well, I would suggest, Your Honor, that in a case in which there was clear that there was no other testimony involved, there was no kind of ambiguity, then maybe there wouldn't need to be any kind of specific findings, right? So if it's clear that there was an eyewitness testimony and there was a trial coming up and nobody suggested that there was another motive or design for the murder. In that case, perhaps, Your Honor. But in most cases, such as in Rolandus G., remember in Rolandus G. there was evidence both ways. And as there was in the Roscoe case in Michigan, evidence both ways. That's why the court said we need to have specific intent evidence because we don't know which way the evidence cuts. And so without that, as a matter of law, there has to be a findings piece. Otherwise, you undercut the specific finding requirement that is in Giles, that is in Rolandus G. So even if you put aside the important separation of powers ruling, which seems to me very clear from Walker, as a matter of law, under the common law or under the judicial rule, the court below error by not specifying, Your Honors, what was that specific intent element? But he is. I understand that you dispute the admissibility of Jeffrey Crackert testimony. But my question to you is, setting aside the other argument about whether it should have been admitted or not, his statement apparently was that he was approached by the defendant and was asked if he knew anybody that could take care of his third wife because she had something on him. Is that sufficient evidence to show intent to silence a witness? I don't believe it is specific intent, Your Honor. I mean, it may be one little indicia. We don't know, of course, because that wasn't mentioned in the briefs below by the state. They didn't think that was important. Who knows what the judge thought. There's testimony in the record that I just read to you. Is that evidence of a specific intent to silence a witness? It is a minute piece of evidence. I don't think it's overwhelming in the case, in confrontation with everything else. Because, indeed. Is the standard overwhelming in preponderance of the evidence? Preponderance of the evidence. Because think about all the evidence that even the prosecution, and now I'm turning to my third point, Your Honor, about is there sufficient evidence, even if the standard had been articulated correctly, and even if the General Assembly's statute is to be ignored. Was there enough evidence, as Justice Stice just asked? And there, what the prosecution has said over and over again is that the defendant did not want to share the pension. The defendant did not want to share his kids. The defendant did not want to be poor. The defendant was jealous of the fact that Kathleen might have received any money. That's what they focused on. That's not this Court's teachings in Giles and Rolanda Street. Very clear that the only evidence that can be probative is evidence they wanted to avoid testimony at a trial. Now, I don't know what that testimony was that, Your Honor, and yes, maybe it's a tiny bit of a fingernail of evidence. But everything else was pointed to was the fact that the defendant didn't want to share the money, didn't want to share the kids, didn't want to be poor, didn't want to have the pension diluted. May I ask you another question? Sure, Your Honor. The Giles case, in speaking about the requirement to have the specific intent to silence a witness requirement, talked about, in certain areas of the opinion, about victims of domestic violence. And this idea is about an oppressive person keeping a victim of domestic violence from, in fact, cooperating with the police. I know those are some direct quotes from the Giles case. Can you help us? What happened here when Kathy reported defendant's break-in and abuse of her to the police and the prosecutor? Was that fit in with the Giles analysis that domestic violence situation should be looked at in a different way? Obviously, domestic violence is fraught with great difficulties and concerns. But I think what the trials was getting at is you can't, if it's separate, cases in which someone wants to make sure that their person they were allegedly abusing is just hurt, as opposed to cases when they want to make sure that they don't testify in court. And that's what the trials were. What happened here when, after Kathy's statement was, Drew Peterson broke into her home, terrorized her, all that kind of thing, she went to the police, she went to the prosecutor, and apparently nothing happened. Yeah, and I don't have any details with that, Your Honor. Maybe the prosecution does, but I'm not aware. And just in closing before I share the argument, Your Honor, you mentioned Jeffrey Pachters, and I just want to say there's two elements of the hit crime evidence that was just alluded to before they can be admitted. Because there was no proffer of that testimony by the prosecution, which they've admitted, even though there was an interlocutory appeal on the bad acts evidence, is a good cause not to submit the name to the defense, first element, second element, is a prejudice. The good cause element is frivolous, Your Honor. The only real question is whether there was prejudice from their failure to comply with Rule 404. And with respect to the prejudice, they've never argued prejudice as a particular stream in this case, they've only argued good cause. But even if they haven't waived that argument, just in conclusion, I want to say this was very much touchy stuff. The fact that a defendant had tried to hire a hit man, you can see how that could sway the jury, and indeed the prosecution used this over and over again in the summation. So clearly, having five days to prepare for this kind of testimony satisfied any kind of prejudice, prong, if you indeed would come to it. Thank you, Your Honors. Justice Tice, since I have been living with this case for many years, the fact I want to answer your question. Counsel, would you identify yourself? Oh, I'm sorry, Steve Greenberg. I'm behind Mr. Peterson. Cathy Savio went to the police and prosecutors and said Drew had broken into her house. And first she went to the police, the police did not take any action. One has to assume that they did not believe she was credible. She then went to the prosecutors, they did not take any action. So one has to believe that they did not think that was credible. So I don't think that you can find any fact that he somehow did something to her a year or two later down the road to keep her from testifying about an event that no one had pursued and no one was prosecuting. And as far as the record reflects in this case, she had never raised again with anybody else. Although she may have discussed it with a friend, but there was no indication to him that it was brewing, that anything was brewing there. So I don't know that you can find that that's sort of the domestic violence exception that they may have been talking about, but I think that was in the dissent in Giles. In any event, I want to talk about how this prosecution proceeded because the rules just weren't followed when it came to how attorneys should conduct themselves. Harry Smith violated the ethical rules on attorney-client privilege and came forward. And attorney-client privilege is one of those sacred things that an attorney should never violate. His statements were not only used at the pretrial hearing to make certain findings that Drew had made Stacey disappear or killed Stacey, but they were also used at trial. His statements were used at trial. And the two issues can't be separated. They're sort of conflated. The ineffective assistance and calling... Could you address the standing issue with respect to the defendant raising the attorney-client privilege? Absolutely. He raised it pretrial, and it was raised again at trial. And in fact, the judge found at trial that we had standing to raise the issue in order that Mr. Smith not testify. Rule 104 of the Illinois Rules of Evidence say that a trial court is supposed to make pretrial determinations about issues such as privilege. And it doesn't provide any limitation on that. Someone has to raise it with the court. So anyone who's a party to litigation should be able to raise these issues. The prosecution was not raising the issue because they needed the testimony. It benefited them. The prosecution should have never pursued this testimony because they are the representative of all of the people, including the defendant. And by pursuing the privilege testimony, the privilege conversations, they in fact were reaching and they were violating the defendant's rights to a fair trial. Assuming the defendant can get over the standing issue, did Stacey waive the privilege by telling the same information to others? Well, she didn't tell the same information to others. There was no evidence. I know the state makes that argument. She had a conversation with Neal Shroy where she said that Drew had come home in the middle of the night and had put women's clothing in the laundry and had told her that she had to lie to the police when they came and questioned her. And then she had a totally different conversation with Smith. She said that, I know stuff. I know Drew killed this woman. I know how he killed her, and so on and so forth. They're totally different conversations. But even if they were the same conversation, if I have a discussion with my friend about something I did that was criminal and then I go hire an attorney and I tell the attorney about what I did, I certainly haven't waived the attorney-client privilege by telling my friend about it. And how do you address the state's argument that representation was declined after the initial consultation and therefore privileged and attached? You have to look at it from her viewpoint, from the potential client's viewpoint. And that wasn't really what happened. The conversation was, I don't think I can represent you. I think I might have a conflict. Well, can you answer some questions for me? Sure, I can continue to answer some questions. The cases that the state cites, the attorney specifically said, I am not going to represent you, I cannot represent you. In one of the two cases they cite, the attorney said, this conversation is not privileged. I am not acting as your attorney in this regard. That never happened here. No one has ever suggested that Stacey did not believe that she was having a privileged conversation with Smith when she had that conversation. So the problem is that if we don't have standing to raise this issue, and Stacey clearly wasn't there to assert her own privilege, and there's no doubt that the privilege still applied, then who is going to raise the issue? We cannot have rules, ethical rules and evidentiary rules that are chameleon in nature and depend on the end result that we want to reach. We have to have evidentiary rules and ethical rules that apply regardless of whether they might constrain the ultimate result or constrain the evidence that's going to be heard. And that's also applies, that same thing applies to the publicity contract that was entered into here. There are clear rules that were in place that said, you cannot do this. Rule 1.8 says, you don't enter into a publicity contract while you're representing someone. Rule 1.7 says, you don't enter into a business transaction with your client. This court's decision in Gacy is clear warning to somebody not to do these things. But the appellate court seemed to just throw up their hands and say, well, in this case we're going to say it's okay. There are, there's a reason why this court has rules, rules of evidence, rules of professional responsibility, rules of ethics, and they need to be followed, whether it's Drew Peterson or it's anyone else. Thank you. Time has expired. Thank you. Ms. Bending. Thank you, Your Honor. May it please the court, counsel. My name is Leah Bendick from the Illinois Attorney General's Office on behalf of the people of the state of Illinois. I will begin with the hearsay question raised by the first attorney for my opponent. Now, defendant has raised three subclaims about the admission of the hearsay through forfeiture by wrongdoing. So I will begin with what seems to be the logically threshold question of what analysis applies to evaluate the admissibility of this testimony. The two candidates are the common law standard, as later more recently codified in Illinois Rule of Evidence 804b-5, and the statutory exception from one, section 115, 10.6. The parties agree that these two analyses differ. The common law slash rule standard only imposes on the state a burden by a preponderance to show two criteria, that defendant committed the wrongdoing, that made the declarants unavailable, and that he did so with the intent to make them unavailable as witnesses. Here, the evidence in question did concern two different declarants, the murder victim in this case, the third ex-wife, Kathy, and the fourth wife, Stacey. And contrasting that two criteria standard, the statutory standard imposes two additional requirements. Yes, it narrows the qualifying wrongdoing to an intentional and knowing murder, but in addition to those two requirements, also requires the state to prove by a preponderance that there is a sufficient safeguards of reliability and that it's in the interest of justice for the evidence to be admitted. The parties agree that these are different standards. And while the appeal on this question was pending, the Rules of Evidence became effective as of January 1st, 2011, which is indisputably before defendant's 2012 trial. So when the appellate court addressed this question, it looked at the rule, it looked at the statute, it noted that one applies to criteria, the statute applies for criteria, and concluded that these irreconcilably conflict. Now, yes. I think you argued at trial that Smith's testimony was admissible, and yet you argued now that it was properly admitted. Which is it? I am, which basis are you, that the. That Smith's testimony was admissible. Well, it's true that the state at the pretrial hearing offered Smith's testimony, and at the trial, it was defendant who called Smith as a witness. And at that time, the state did object to the admission of that testimony, but only on the grounds that it would be improper to try to impeach this hearsay statement through Smith's testimony. So right now, it's defendant's position that it is barred by attorney-client privilege, and so it's his burden to prove whether it's privileged. So it's not that the state has changed in its position, it's just now we're in the posture of review where defendant is raising this claim, and he is the one who called Smith as a witness. So to the extent that he's trying to claim some sort of error in the presentation of that testimony, he invited that error into the trial. And so he is not entitled to secure a reversal on the basis of an error that he himself invited by calling Smith as a witness. But as to the separation of powers point about the forfeiture by wrongdoing doctrine, defendant has confused some important separation of powers principles here. He has overlooked the fact that there are two different lines of separation of powers analyses. On one, when we're talking about legislation that is addressing the judicial branch, there is a small core of types of day-to-day operations of the courts that the General Assembly is just flatly forbidden from ever legislating about. But that is not the situation we have here. What we have here is a provision on the rules of evidence. That is potentially fair game for the legislature to address. However, only if the legislation is complementary with court rules. Because after all, we're talking about the judicial branch. And court rules, like the rules of evidence that this court adopted, are the primary source. And under cases like Walker, if there is a conflict between a statute and a rule, it is the rule that prevails. And for good reason, because we are talking about proceedings in the judicial branch. Now, the cases that defendant has cited where separation of powers arguments have been rejected are all distinguishable from this case. From this case here. I mean, Walker is a good example. Because there, the ruling question was not even really on the same topic as the statute. The rule concerned the initial assignment of cases, whereas the statute concerned substitution of judges. But here what we have is a rule and a statute that address the exact same topic. What does the state have to prove for hearsay evidence to be admissible under the specific exception of forfeiture by wrongdoing? The rule imposes two criteria. The statute imposes four. The two cannot exist side by side. Now, Justice Garman did raise subsection G of the statute. And that's an important consideration as well. The text of that provision provides, quote, the section in no way precludes or changes the application of the common law. So arguably, that undercuts the position that they conflict. But what it instead seems to envision is that the legislature in 2008, when this provision was enacted, and at that time, that was before the rules of evidence existed, looked at the common law and said, okay, we're acknowledging there's a common law doctrine. We are not touching that. That is continuing to exist unchanged. We are now creating a second path for the admission of evidence. And we do not change the common law, but we are creating a second path side by side. If this court endorses that reality from subsection G, defendant still loses here. Because remember, defendant is insisting that the extra criteria of the statute must apply. But by the plain language of subsection G, the common law was existing untouched. So either way, either there's a conflict and the rule governs under well-established separation of powers principles, or if under subsection G, that you can coexist, defendant still loses. Because he has no basis to insist on the extra requirements of the statute under its plain language. So when would the statute ever be proper? Well, that's true. That's the awkwardness of it. And so really, if this court wants to address which one, which reality should be endorsed, that's why the conflict is the better resolution, because there never can be a piece of evidence that is admissible under the statute that is not also admissible under the common law. And so that's why it is a better approach to recognize that they conflict, that there's no purpose in having two paths, as section G seems to envision. But in any case, because the rules of evidence became effective in 2011, and because the statute was repealed in 2015, there's really no reason for this court to be concerned, because the situation isn't going to rise again. And perhaps there's no other case that is in this posture, given this very short period of time that we're talking about. Because the bottom line is the defendant's argument does not prevail either way. So turning then to the second subsection about the admission of hearsay, defendants' insistence as a matter of law in interpreting the second intent element here, it simply has no basis in any case law. He has invented, out of thin air, this notion that the state has to specify what testimony it is acting to prevent, that defendant is acting to prevent. It is certainly true that like in any circumstance where intent must be proven, it is often shown through circumstantial evidence. There is very rarely direct evidence from defendant acknowledging his intent. And so certainly the extensive, compelling evidence that is outlined in the Appellee's Brief as to both of these declarants, does demonstrate how defendant benefited from Kathy's absence, from preventing Stacy from reporting wrongdoing to police, or bringing this, or filing for divorce. And. Can I ask you to focus on that for a moment? Yes, please. So the issue that obviously is important here is the sufficiency of the evidence as to this specific intent of silencing a witness. Yes. And so we have cases around the country, and we're trying to figure out where this case fits. So in our own Hanson case, the victim told her sister that the defendant would kill her if she told anyone about a crime he had committed. At the other end, we see cases around the country that say a son and his mother get into an argument and he kills her, that that's not enough proof to show specific intent. And then we have a Jensen case that says, one who kills a spouse to avoid a messy divorce is not acting to prevent the spouse from testifying, but to eliminate the need for divorce altogether. So could you tell us, what is the evidence that you are directing us to, to show not just generally a motive to kill, but specifically an intent to silence a witness? And just to be clear, as to Stacy in particular, or both Kathy and Stacy? I'll start with Kathy. Okay. Well, first I'd like to address the quote from Jensen that you just highlighted, because it's important to note that in Jensen, the state was arguing that the intent element was proven, because much like in any murder case, by killing the witness, you always make the witness unavailable. Well, when you're talking about killing a spouse, that in every case will obviate the need to divorce your spouse. Because it's noteworthy in Jensen, I believe it's at page nine of the case, eight through nine, the district court acknowledges that there was no evidence from anywhere that either spouse was seeking a divorce. So it was a hypothetical divorce. You can't just say, now you've killed. I'm not sure how that helps answer the question of whether, what evidence here, where there is a divorce going on, that killing her would silence her in some way. Other than the fact that the divorce would be over, the marriage would be over. Okay, so. Other evidence. Sure. With Kathy in particular, it's noteworthy that at the June 2002 hearing on the divorce, with regard to the temporary support order, that Kathy testified. And fast forward to October 2003, when the divorce judge was making a settlement recommendation about the case, how she thought that the marital property and ongoing things were likely to be divided up. That when defendant was informed of that, he became very upset about how the divorce case was proceeding. Now fast forward to the fact that the trial on the divorce was set for April 2004, approximately a month after Kathy died. Are you arguing that if she had appeared to testify, the result in the divorce case would have been different? Yes. Yes. Definitely true. That is definitely true. Number one, we think that the defendant would have subjectively expected she would testify, given the fact that she had testified at the preliminary proceeding. That the judge had given indications about how the divorce would proceed, which would include that she would get the marital house, she would get full custody of the kids, she would get approximately half of all the marital property. But fast forward to once she was absent, and defendant was able to maneuver the estate by having his uncle stand in as the administrator of her estate, that what the end result was, he was able to fire the divorce attorney. Going back to the Jensen case. Yes. If she was not there for the divorce trial, he would not have to share his pension, let's say, or he would have a better result. Is that what you're saying? If she had been there to testify, she would have continued to object to awarding all of the marital property to defendant. She would have objected to him getting full custody of the children, which is what actually resulted once she was absent, and he was able to manipulate the system behind the scenes. An important quote is from Davis. Davis versus Washington from the United States Supreme Court. Davis, in describing this forfeiture doctrine, said, quote, when defendants seek to undermine the judicial process by procuring or coercing the silence from witnesses and victims, the Sixth Amendment does not require the courts to acquiesce. What we have here is defendant completely thwarted the judicial process of the divorce case with Kathy by getting her out of the system and preventing her from continuing to be present to object to his approach to the settlement, to his desire about the custody of the children. But hasn't that been the debate about the nature of this doctrine? Whether it's only an equitable doctrine where the court is offended by the conduct that undermines the integrity of the court and therefore allows this evidence in versus the idea that not just generally that the witness is unavailable, but that there's this additional element specifically not just to end the case, not just to get a better result, but specific intent to show the intent to silence the witness, not just generally the case is going to go away. Yes, I agree. It's important to, two points to that. The first point is that although it's not enough to show that defendant benefited from the witness's absence, it's certainly relevant. It's relevant circumstantial evidence to show intent as well, that if defendant were aware of how he would benefit from the witness's absence and specifically that he was preventing this person from being a witness in a proceeding, we're not saying that that is now not part of the consideration, that of course is relevant to show this intent. And indeed here this is a good case for how this bolsters this ultimate conclusion in this case. That defendant knew that Kathy was going to testify in April 2004. He knew that she was contesting and would not settle this divorce case as to either the property or the child custody. And once he made her absent and prevented her testimony, her objection was lost and the judicial system was changed. The result of that divorce was changed. And to take a step back, both with regard to Kathy and Stacey, we should remember the standard of review. This is a preliminary inquiry where the state's burden is to show it's more likely or not, that the intent is proven, that it's at least part of the intent. And since the circuit court found that the intent factor was satisfied, this is an abuse of discretion standard. Because after all, the circuit judge observed the witnesses here for weeks on end, dozens of witnesses on this topic, and he was in a better position to make this decision ultimately and this court should defer to that. And the abuse of discretion standard, defendant has not shown that the circuit court's conclusion was an abuse of discretion. As to Stacey, it's also important to note, although defendant objects that there was no court proceeding at the time, this is not simply the case where the spouse was murdered and Jensen says, now you don't need to divorce her. There was compelling evidence to show that she was imminently, within days, going to file for divorce and that defendant himself subjectively feared that as part of the divorce process or maybe even independent of the divorce process, was going to start to tell others, including the police, his co-workers at the police force, that he was involved in Kathy's murder. The fact that there are multiple independently sufficient bases in which defendant made Stacey unavailable as a witness does not undermine the sufficiency of that evidence. And so, if there are no further questions on the forfeiture standard point, there are several other issues in this case and I would like to turn briefly to begin to the per se conflict question about Defense Counsel Joel Brodsky. It's important to remember that the state in objecting to this claim is merely suggesting that this type of alleged conflict of interest is better considered as a potential actual conflict of interest, not a per se conflict. Now, this court has been rightfully hesitant to recognize per se conflicts because it's automatic reversal without a showing of prejudice. Now, when you look at the three recognized categories of conflicts, two things that they have in common that are noteworthy is number one, there are ties to the prosecution between Defense Counsel and number two, that they are simple, factual matters. Defense Counsel, have you previously represented the victim in the case, yes or no? Now, that is not true in the media contract context because it is far from clear that a media contract in every case will create directly adverse financial incentives for Defense Counsel. Instead, it could be perfectly aligned with the loyalty to defend a client. A book deal may be more valuable if you secure an acquittal for your client. And a second point to remember is it's hard to tease out, where do these financial motives come from? Is it truly from the media contract or is it from the fact that the client is a famous client? This is a good example because here we have a media contract that expired pre-indictment. So, there was no financial stake in the litigation during a single day in which the criminal case was pending. And instead, defendant's allegations about how he was trying to get his name in the news, he was trying to draw up proceedings to keep his name in the news, that has nothing to do with the media contract per se, it has more to do with the fact that Drew Peterson was the client. We do not, this court should be hesitant to create an incentive for Defense Counsel to secretly, with defendant, sign these media contracts, have money in their pockets, and then hide these contracts in a drawer and be able to say post-trial when the court and the prosecution was unaware of these contracts that here is your ticket to automatic reversal. To recognize a per se conflict here would actually create a perverse incentive for a defense attorney to secretly sign these contracts in these high profile cases. So this, by instead analyzing this under the actual conflict of interest inquiry, this court would merely be requiring the defendant to connect a few dots to point to the adverse financial incentive and connect it to an adverse effect on representation to ensure that this is not an avenue to secure automatic reversal for any case involving a famous client. I know I'm very short on time, so if there's any other questions from the court on these legal issues, I will rely on my briefs and ask this court to affirm the third district appellate court. Thank you. Thank you. Bruce Buttle. First of all, let me address the hearsay issues in the separation of powers. If the common law was to apply in this case when they enacted a statute, and the state's attorney in this case said how he went to the legislature and he had this statute enacted to help him to indict and secure a conviction against Mr. Peterson. That's in the court record, those comments. If the common law was to apply, then why have the statute? Then the statute's meaningless. So the legislature, in their judgment, decided that in this limited circumstance, the statute should apply, and that's not uncommon. There is a whole section of the Code of Criminal Procedure where the legislature has made evidentiary determinations about other crimes evidence, about evidence in sex cases, about business records, and so on and so forth. It clearly is within their purview to make, to pass statutes that govern when certain evidence is otherwise admissible, and it's up to the courts to then apply the statute in a meaningful way, and that's what would happen here. Why should it be treated differently than when there's a conflict between a rule and a statute? Well, there's not a conflict between the rule and the statute. I understand that. By analogy, why should it be treated differently? You're arguing, don't look to the common law. There's a statute that's in conflict with the common law. Opposing counsel indicated that it should be treated as if there was a rule. If there was a rule in a statute, the rule would take priority, right? If they were identical, I think the rule would take priority, if there was an identical rule. But there wasn't. This court has not entered a rule of evidence to apply for forfeiture by wrongdoing in a murder case when a witness is involved. So this court does not have a rule that's the same as the statute. There's a statute that applies in a certain situation, and then there's the rule that this court has crafted, but the two are not the exact same. If the legislature were to pass a rule that said that relevancy is defined as, and it gave a definition, and this court has its rule of what relevant evidence is, then I think there would be a direct conflict. But there's no such conflict here. Is the distinction that it's common law versus a rule, or is it the distinction that the statute has two additional requirements than the common law? See what I'm saying? Is it the fact that we're not dealing with a rule here, and we're dealing with common law, or is it the distinction is that the statute is different in the requirements that it has in the common law? The statute is different in its requirements than the common law. That's clear. The statute imposes additional requirements more than what this court has found, for instance, in the Hansen case, where the court said basically that reliability, though it wasn't really much of an issue in that case, that reliability was not something that the court should determine. But they said. So let me just follow this point. So if the case law, I'm trying to understand your position. If the case law indicated two requirements, or four requirements, and the statute indicated four different requirements, in that instance, the common law would take priority? Well, the legislature passed this statute after this court decided the Hansen case. So I think that it's their prerogative to pass a statute after a court decision is made and say we know there's this court decision, but we would like the law to be this in this situation, and I think that that's a fair reading possibly of what happened here. So, and that's the checks and balances that exist. So the legislature passed the statute, said under these circumstances, this is what should apply, and I think that the court was bound to follow that. If after the statute came out, there was a rule that indicated quite the contrary, in that case, would the rule take priority? I think that if there was a rule that was identical to the statute, not identical in the wording, but if there was a rule that said in a murder case. Well, take this case. I mean, forfeiture by wrongdoing, what requirements are necessary? It's, I'm just trying to understand your position if it's the fact that out of the case law came requirements versus out of a rule came requirements that the statute takes priority and there's a separation of powers instance. It seems like you're saying that because the statute came out after the case law and because that statute had additional requirements that therefore the statute is given priority. Yeah, I think that I'm sort of on a timeline. There's the case law, then there's the statute, and then there's the rule that's enacted. So really, to me, the question is, and maybe I'm looking at it backwards, is when this court enacted the rule, did that trump the statute? Not the case law, because the case law precedes both. So when this court enacted the rule, did that trump the statute? And I think that the answer to that is no, because the statute was enacted, it was an expression by the legislature that in a specific set of circumstances, this should be what, how a court approaches forfeiture by wrongdoing. When you've got the murder of a witness. There are other situations of forfeiture by wrongdoing. You can pay off a witness. You can just do other things to entice them not to show up. And so I think in that situation, the rule would govern. But in this limited circumstances, the legislature has said, and they said as a matter of policy, we want these additional protections in these cases. And the state says that, well, they argue not only should the rule apply, but they whittle away at the specific intent requirement, saying that, well, if there was any benefit to the defendant, that's all you have to see. Does the defendant benefit by the death? And that's the exact opposite of what Jensen and the other cases say. The state says that if there had been a divorce trial, there would have been a very different result. That's the opposite of what they argued in the trial court. And in fact, on the interlocutory appeal that they took, one of the issues was they wanted to call an expert witness who was going to testify that if Kathleen had been around and there had been a divorce trial, the same result would have been at the end of the divorce trial as was at the pre-trial. In other words, the judge would have listened to all the evidence and then done the exact same thing she had recommended at the pre-trial. And the appellate court said that was ridiculous, but that was what they argued, which was the opposite of what they're arguing here. So if there's a different rule for when the unavailability of the witness is occasioned by murder, it's more difficult to get that hearsay testimony before the court than in other instances? That's what the legislature has decided for whatever the policy reason is. Maybe they think because a murder is a much more serious crime because the penalties are more severe. Whatever the reasoning is behind that, that is a legitimate right of the legislature to make that policy decision. So the statute is limited to the murder cases? Yeah, it talks about murder of a witness. But then the rule applies to everything else. Right. Well, I'm saying the two can be harmonized. That in the situation where you're talking about the murder of a witness, just like in domestic violence cases or in certain sex offenses, you've got different rules. The legislature has said certain evidence should be allowed in in those cases, and in other cases it isn't. Legislature here has said, in a murder case, there are these additional requirements before you admit this evidence. But you're not talking about the trial case, the murder trial. You're talking about the murder of the witness, no matter what case the evidence might be used in. It could be in a theft case or whatever. Right, you're talking about when a witness is murdered. That is correct. And if I can move on for one moment before my time runs out on this alleged conflict issue. As I was listening to counsel argue, I really, and I don't mean this disrespectfully, I was kind of offended by that, that there's going to be some secret thing that defense attorneys are not going to do. We're all going to enter into media rights contracts, and we're going to bury them in our desk drawer. And we're going to hold them there so that we can go out at the end of a case and claim that there was some per se conflict, apparently risking our license in doing so. That just to me, that's not what happened here. What happened here is that somebody, during the relationship that they had, and it was a continuous relationship, relationship is not defined by the date of the indictment. During the relationship, if I could just finish this point. Please do. They entered into this contract, and then they sensationalized the trial. Now maybe a better counsel wouldn't have sensationalized the trial. And I just want to address why. Because when he called Harry Smith, and we've made all the arguments why it was ineffective. And everyone says he called Harry Smith to impeach Shorey. Shorey said that Stacey came home and she was told to lie. What was she told to lie about? She was told to lie about whether or not Drew had committed this crime. Then Brodsky goes and calls Harry Smith. And Harry Smith says, Stacey told me that Drew committed this crime. So it didn't impeach Shorey's testimony. It supported Shorey's testimony. It was putting in that your client was guilty. Now if they think that we're all going to enter into media rights contracts, so we can go blow a case like that. Your time has expired. Thank you. Thank you. Thank you, Mr. Greenberg, Mr. Krant, Ms. Bende, for your arguments. Shorey's excused. The court will take case number 120331, People v. Peterson, agenda number, under advisement as agenda.